Good morning, Your Honors. My name is Thomas Heffron. I represent the Appellant, CommoLoCo, and if it pleases the Court, I would like to save three minutes for rebuttal. You may. Thank you. As Your Honors know, this case arises out of the entry of a default judgment against my client, which was a small loan lender with about 16 branches in Puerto Rico at the time. CommoLoCo asked that the default judgment be reversed so that it can get its day in district court. It recognizes that the removal of the default judgment is going to put everyone back to square one, and that my client actually may go to trial and may lose more money. They just want the fairness that is inherent in being able to actually show up to court, put forth their evidence, put forth their arguments, and if he gets to trial, have the jury decide. The district court committed error in finding that the service on my client was proper. Couple of fundamental facts are clear. Service was attempted by serving the registered agent. The designation of who the registered agent is a matter of Puerto Rico law. Under Puerto Rico law, that person is the person who is appointed by resolution of the Board of Directors of CommoLoCo. One point we didn't bring out. Yes, Your Honor. I'm still trying to figure out in this case, what responsibility does your client bear for filing an annual report which misidentifies the registered agent? Your Honor, I obviously recognize that my client did that. It was an error. A statement by my client that it was the annual report. That it was. But why when it's picked up by the Secretary of State, there's a website, according to the appellees, there's a website obligation to correct any errors that an individual user sees on the website. And why shouldn't the public be allowed to rely on a document you file and on a website that you neglected to correct? Your Honor, a couple of points on that. With respect to the user requirement on the website, my client didn't post the annual report. That was posted by the Secretary of State. So in that sense, they don't fall within the four corners of the user. But Your Honor's more general question is an appropriate one, which is, why is it my client's fault or why should my client bear the loss? The fundamental problem that we have, and as is shown by the process service very affidavit, is the first place she looked was actually the website, the Department of State's website. Not the annual report, the Department of State's website. And it said that Prentiss Hall was the agent for service of process. It was out of date. She then looked at the annual report to confirm, and she said, okay, I see Prentiss Hall, so Prentiss Hall is probably the right person. And she went ahead and served. But as explained in the affidavit, the error in the website, the Department of State's website identifying Prentiss Hall, was actually what caused the error in the annual report because it's auto-populated when the annual report is filled out. Clearly my client made an error in not going back and correcting that auto-population, as it were, in the annual report. But even if it had done that, we still would have the problem that the Secretary of State's, the Department of State's website was simply out of date. And if the process server based on that website had gone ahead and served Prentiss Hall as she did, we'd still be here. The issue of who is the, the issue is an objective one, we would suggest, and it's who is the registered agent at that time. A registered agent... Well, before you leave the annual report, can I ask you a couple of questions about that? Of course, Judge Thompson has brought it up. Number one, is there any evidence in the record that the website was affected by the annual report? I mean, as I understand what happened here, factually, is that the change of agent form was recorded or filed with the Secretary of State in April of 2011, all right? That's the point at which the website should have been changed. It was not. The annual report was then filed in 2012, but there was no change made in the website. Is there any evidence that at that point, anyone in the Secretary of State's office looked at the annual report to compare it to the website, and the website was left as it was because of the error in the annual report? Judge Selley, no evidence of that. In fact, remarkably, if I may go on for just a second, remarkably, in the district court in this case, someone from the Secretary's case office submitted a letter in 2013 telling the court that their website was inaccurate, yet they took an entire year to correct it. So even though they recognized the error and recognized it was the subject of a judicial proceeding, they still didn't go ahead and correct it. The other thing is, tell me a little about the annual report as I understand it. You correct me if I'm wrong, although it was filed in 2012 before service was attempted, all right? It was supposed to be a record referable to the annual year 2011? Yes, Your Honor. Okay. And in 2011, that was the year where part of the time Prentice Hall was the agent for service and part of the time CT was the agent for service? That's correct, Your Honor. One thing I didn't bring out in the briefs that I want to raise to the court that relates to this is, as a matter of Puerto Rico law, the registered agent has to be identified in the Articles of Incorporation of the corporation, okay? So it's not... Are the Articles of Incorporation filed with the Secretary of State's office? Yes, they are, Your Honor. Okay. So was the correction in the Articles of Incorporation filed? Yes, Your Honor. That was what was filed April 11, 2011. And so, I mean, this is an important point, again, apologies to the court to not raise it, but the reference is Title 14, Section 3502, Section A2. So you have to identify the agent in the Articles. We did that. We did our best to update those references. That's a section that isn't cited in your brief, is that what you're talking about? It's not cited in the briefs. So you're going to send us, right after the argument, a 28-J letter? Yes, I will, Your Honor. So we'll have a formal record of that? That's correct. It is referred to in 3543, which is cited in the brief, which discusses the procedure to amend, okay? But the actual fundamental requirement that appear in the Articles is 3502. It's referenced there, and I'll send a 28-J letter to Your Honors. So that's very important, okay? So it's an objective test, we would contend, and you cannot change the registered agent without having the Board of Directors actually do a resolution. You can't identify an agent by virtue of what you say in your annual report. You can't identify an agent by telling someone, this is my agent, or having someone say, I am their agent. It has to be done by the Board of Directors, and we show the only evidence as to what the we submitted to the judge, and it showed that that, in fact, was a point in CT Corporation about a year before the service. But the plaintiff's argument here seems to be in the nature, I don't frame it in these terms, seems to be in the nature of an estoppel argument, that because you misidentified the agent on the annual report, because you had access to the website and didn't take any action to correct it, all right, you should be precluded or stopped at this point from denying that service was effectual if served on Prentice Hall, since you allowed Prentice Hall to be held out as your agent. That as I understand it is the core of the plaintiff's argument, and I'd like to hear your response to that. Sure, Your Honor, and Your Honor correctly points out they don't argue estoppel, they didn't in front of the district court. Estoppel, and so the law about whether estoppel is an appropriate rubric to go around the issue of service is not briefed, not discussed. Importantly, of course, estoppel would require, among other things, as I understand the general law of estoppel, balancing of the equities, intent, reliance, and also some measurement of what the harm is. So for example, a court could find the harm here is the effort and money spent in actually litigating the case unnecessarily through to a judgment, as opposed to the actual judgment. I don't know, because I don't know what the law is, we haven't gone that, but they did not argue estoppel, what they instead actually argued is they argued the agent is Prentice Hall, and the court found the agent is Prentice Hall, and given the framework of the corporation law in Puerto Rico, where only the board of directors can appoint the agent, and where we went through the procedure, and the sector of state certified in December of 2011 that the agent was CT Corp., the errors that led to this misadventure really arose out of the website not being updated, which is why... From Como Loco's point of view, all right, the issue of estoppel, the issue, framing it as an issue, just isn't in the case, it's been waived because it hasn't been presented, it hasn't been briefed or argued by anyone, wasn't briefed or argued in the district court. That's correct, and you know, this all happened relatively quickly in the district court because we had money that was, had already at that point been executed and seized. So my take on their argument was that they were arguing a parent agency. They do talk about the Prentice Hall, the folks at Prentice Hall saying, yes, I am the agent, but we cited cases in our brief, and I think it was at 29 to 30, that you can't be an agent by virtue of saying, yes, I am the agent. This is again an objective test, which we... I thought their argument was a little bit beyond that. They're saying that, not simply because Prentice Hall said that they're an agent, but because it goes beyond that, once again, tying into the annual report, that because they at least held out to the public in this one document a representation of agency. Your Honor, I don't believe they made that argument to the court. They, I mean, the argument, again, if you go back in the briefs, and this was, you know, brief reply, order, brief order, I mean, it was a very short, small number of submissions. Their argument was the agent, that Prentice Hall is the agent. Not that if CT is the agent, you're stopped, or not that if CT is the agent, you held yourself out, that Prentice Hall was the agent, so you're, in some sense, stuck with that. They didn't argue either of those two points. They argued that the evidence was that Prentice Hall was the agent, and more important, the only and solely because of a finding that Prentice Hall is the agent. So that's what's on review here, and the framework, again, of Puerto Rico corporate law, to the inevitable conclusion, we believe, that Prentice Hall was not the agent at the time. And I have a factual question. Is there anything in the record that indicates once Prentice Hall got the paperwork, what happened to it? No, Your Honor. There is an affidavit from my client that said, as of the day of the execution, no one at the company knew of this lawsuit, so I guess one can conclude from that sworn statement that Prentice Hall didn't give it to anyone at Comoloco. Have you put Prentice Hall on notice of a potential claim? Your Honor, I don't know the answer to that question. My time is up, and I'll be back to speak to Your Honor's rebuttal. Thank you. Good morning to this honorable panel. For the record, this is Attorney Alejandro Belver-Espinosa for Plaintiff Maribel Vázquez-Robles. As this honorable judge once said, 80% of success in life is just showing up. Yesterday morning, Comoloco filed a, yesterday morning, until yesterday morning, Comoloco's theory was that the district court and Ms. Ima González-Marrero, that's our server, erred on relying on the State Department website because it was outdated and provided erroneous information. On the afternoon, tomorrow, on their continuous peace meeting litigation, they filed a motion and they included several documents that, among others, they included a correction of the articles of the corporation. With said motion, they throw to the garbage all their theory regarding that this court and the district court should not rely on the State Department website. But doesn't the website itself contain a disclaimer that says don't rely on this website? It has a, like a warning for users that it's, yes, that it has a warning for all users to be careful with the information on the website. But if you go directly to the old San Juan, where they have all the physical evidence, they have the same physical evidence as the record. But if Puerto Rican law requires that the service agent be identified by a vote of the board of directors and that that be contained in the articles of incorporation, and if the articles of incorporation did not list Prentiss Hall at that time as the agent, isn't it a matter of, and we all rely on websites these days, but when they tell us not to, isn't this the kind of example that we should all remember that you can go and find the actual document, which according to Puerto Rican law would be the articles of incorporation, which would tell you who the correct service agent is, and you know, you act at your own peril by not going behind the website and checking what, according to Puerto Rican law, is the definitive word on the agent. Look, Your Honor, I refer this court to Appendix 131. They included a certification that states the change of resident agent. They state the previous resident agent, and it says the Prentiss LLA Corporation System of Puerto Rico. That corporation, it's wholly different with the actual agent resident, that's Prentiss Hall System of Puerto Rico. Thus, they filed on 2011 an incorrect, they requested an incorrect change of resident agent. They requested the Prentiss LLA, which did not exist as a resident agent, to change to the CT Corporation, but the Prentiss LLA did not exist as a resident agent. The one that existed was Prentiss Hall System of Puerto Rico. So there's another error over there. Now wait, counsel, wait a minute. It seems to me that you are now arguing a ground that wasn't argued in the district court and that wasn't argued in your brief. You are now telling us that because the change of registered agent form, which was apparently filed in April of 2011, referred to Prentiss Hall by something other than Prentiss Hall's exact name, that that change of registered agent was invalid? Is that the argument that you're making now? Well, as part of, yes, they filed a motion. Wait, forget they filed a motion. Is that the argument that you're making now? As an additional argument, yes, Your Honor. All right. And that argument has never been made by you before? That's correct, Your Honor. Okay. And we're talking here about public records. Excuse me? We're talking here about public records. You could have just gone down to Old San Juan and looked at these records. Yes, Your Honor. Okay. The same information, this certification, the Appendix 131, was not available on the State Department website and on the physical State Department, the Old San Juan. They bring, for the first time, this document when they filed the Rule 60 motion, the District Court. And Section 3543, which they allege on, they include on their brief, Section 3543 of the General Corporation Act, state that they should include the former agent. They should include the former agent and the new agent. They did not include the former agent because they mistakenly included the Apprentice LLA, which is wholly different from the Apprentice Whole System of Puerto Rico. Moreover, they, on yesterday's motion, they allege that they Wait a minute. I'm trying to figure out what you're trying to say here. So are you saying that because they listed an incorrect agent as to who their former agent was, are you arguing this morning that they didn't make an effective change in agency? I'm just trying to, I don't understand the import of what you're saying this morning. Yes, Your Honor. Is that what you're saying? Yes, Your Honor, in lieu of yesterday's motion. You're saying that the change of agency was void and somehow this only came to your attention when they filed what they filed yesterday? Yes, Your Honor. Yes, Your Honor. We know that when they filed yesterday's motion and we reviewed the whole motion, the whole exhibits together with the record, we realized that they failed to comply. Even though we generally allege on our brief, they failed to comply with Section 3543. And I understand the point of this court that I am bringing this point right now. But since yesterday, they are bringing a new theory to this court. I think that Excuse me. What new theory are they bringing? That this court now should rely on the State Department website. That we should rely on the State Department, on the Puerto Rico website? Yes, because by filing all the documents that they printed out from the State Department website, they are requesting this court to rely on those documents that were printed out from the State Department. And how does this court know that the documents that they filed yesterday, printed out from the State Department, are accurate? Why the defendants on the brief Excuse me. We are mixing up two different issues. They have asked us to allow a supplemental filing of historical information. We are not talking about argument. We are not talking about opinion. We are talking about historical information. Information that presumably anyone in this room could print out from that website. All right? They have asked us to accept that supplemental filing. All right? Are you telling us that that information is not accurate? No. Okay. So you can see the accuracy that those materials they printed out are really printouts from the website. That is my point. Okay. And now what new theory are they basing on that? You keep saying they are making a new argument. I think they are making the same argument that they have made all along, that Prentice Hall was not their registered agent at the time of service of process in this case. My point, Your Honor, is that Ms. Gonzalez, our server, relied on the State Department website. And they suggest that the request that the district court err on relying on the district court and Ms. Gonzalez relying on the State Department website. Our point is exactly that. Defendants on their motion, they allege that the State Department is correct and they provide current information. They say that there is a legendary backlog, but it is not until March 2014 that for the first time they request, and for the first time they request and it appears on the State Department website, they request the change of resident agent, and one month later it appears on the State Department website. So there is no legendary backlog. On March they requested, one month later it appeared on the State Department website. So that is wholly contradictory with our theory. Moreover, in Loiza Avento and Hospital versus Parque Industrial, this first circuit imposed a duty to corporations to keep up-to-date records before the State Department. Moreover, as this court stated... Before you leave, those two first circuit cases you just cited, do you recall those cases were decided, one in 1981 and one in 1985. In 1987, the Supreme Court decided a case called Omni-Capital. Do you contend that the two first circuit cases remain good law in light of Omni-Capital? Definitely, Your Honor. I just want to get your position. Definitely, Your Honor. The Omni-Capital case did not address this particular issue. Moreover, despite Loiza and Hospital, we have a case from the Puerto Rico Supreme Court that's Hatch. On Hatch, this circuit court cited Hatch, that's a case from the Puerto Rico Supreme Court, and that we also cited on our brief. And that case imposed defendants, corporations, to keep up-to-date records. And moreover, defendants included on their continued peace meeting litigation, they included a State Department policy which, among others, it stated that the standard of use of the State Department website was that if any error was found, then they should have notified the State Department of that error. They did not do that until March 24, 2014 with the motion that they filed yesterday. Is there any evidence in the record that Comoloco knew of the error in the website prior to the date that Prentice Hall was served? Yes, Your Honor. It's the annual report. And how does that show that they knew of the error in the website? Your Honor, if I am Comoloco, and I hire an accountant, and that accountant files an annual report stating that the current resident agent is Prentice Hall, and he also, together with that annual report, they file a statement by the vice president of Comoloco, they know, they cannot say that they don't know about that huge error, Your Honor. That sworn statement was signed by the vice president, Mr. Bingen. And, of course, later on, that accountant filed a sworn statement stating that, I'm sorry, that's my error, I should have not filed that before the State Department. But that's a huge mistake that they made. And the public should rely on public records. Every jurisdiction in the U.S. relies on public records of the State Department. Every lawyer in Puerto Rico relies on the State Department website. That's why they also, including yesterday, filed their original documents. Excuse me, isn't that what your case really comes down to? That you're arguing that corporations have a duty to police the website and to ensure that the Secretary of State gets it right, to correct errors. That they are in the best position to do that, and they've got a duty to do that. Isn't that what your case boils down to? Your Honor, yes, they should have. When they notice that error, they should have noticed that error, and they should have corrected that error. One last point, Your Honor. Quickly. Huh? Quickly. Yes, Your Honor. Ms. Gonzalez reviewed the website. The website contained the information about Prentice Hall. The annual report contained Prentice Hall. Kenneth Berry, the representative that received the summons, stated that after reviewing the State Department website and after reviewing their list, he represented that he was the current resident agent. Once again, defendants view theory that this court and everybody can rely on the State Department. I'm sorry. Thank you very much, Your Honor. But you've covered it in the brief. Excuse me? You've covered those points in the brief. Thank you. Thank you very much. Your Honor, I just want to address only a couple of brief points. First of all, the point that was made by my brother about the certificate of the Secretary of State. As Your Honor has correctly pointed out, this is not an issue that was raised at all. The certificate, A131, Appendix 131, was actually submitted in connection with the motion under Rule 60B-4. So it was in the case from the very first day that this default judgment question arose. No question was raised at the time that this was inaccurate or somehow had undermined the effectiveness of the change of resident agent. I would point out- Can I address Judge Selye's point? Which one? Upon whom should the duty to police a corporation's website rest if not on the corporation? Particularly if when you're filing an annual report signed by a vice president which incorrectly lists the registered agent. Your Honor, a couple of things I guess I'd say in response to that. Perhaps the law hasn't caught up with the technology in terms of creating such a duty. I would suggest that the duty would be one that the legislature would need to create as opposed to the court. I would point out that creating such a duty and imposing it on my client- But if there is a duty to file an accurate annual report, though, that's already- That's correct. There is a duty that- And so the Secretary of State took your annual report and put it on their website. That's correct, Your Honor. But again, the fundamental error here is the error with the listing of Prentiss Hall as the current agent when in fact the Secretary of State had filed certified board of director minutes showing that the agent was CT Corp. Does the Secretary of State do anything other than post your documents on the website? With respect to the- Anything. I mean, do they make their own entries based upon your filings? How does that work? Certainly they- I mean, for example, the webpages or whatever are things other than the actual documents, so they create the website. There are some places where you can link through to documents, but they also do post sort of information that they draw from the records that were submitted to them. And so, for example, they- What about the information about who your registered agent is? That would be information that was right off the articles of incorporation. Okay, so did they extract from your filings the information and post it in an entry created by them, or are they simply linking that information to your filings? The former. They created the filing, as you see from the webpages that have been put into the record here. And the problem is that when we then said, here's an update, here's the board of director, that changes the name, they didn't go and say, okay, I have to go fix the website. And so people looked at the website that they had created and still said Prentice Hall, and that was the cause of the problem here. But again, the question as to who would be proper agent, as the Omni Capitol says, is really a question of state law and imposing common law rules to try to somehow change the agent is not appropriate. That's something that's better left to the legislature. Perhaps there needs to be a law with respect to updating websites or some kind of protocol, but that's not the environment we have now in light of the laws of Puerto Rico. Thank you for your time, Your Honor.